UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAXITRANSFERS LLC, | CASE NO. 2:24-cv-01016-LK |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT |
| v. | |
| ENVIOS LA COSTENITA 1, INC. et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff Maxitransfers LLC's Motion for Default Judgment. Dkt. No. 17. Having reviewed the motion, Maxitransfers' supporting materials, and the remainder of the record, the Court grants in part and denies in part the motion and enters default judgment against Defendants Envios La Costenita 1, Inc. and Nancy Cardenas Garcia.

## I.    BACKGROUND

**A.    The Financial Agreement Between Maxitransfers, Envios, and Cardenas Garcia**

On December 5, 2019, Maxitransfers and Envios entered into a money transmission agreement (the "Transmission Agreement"). Dkt. No. 10 at 3; *see also* Dkt. No. 17-2 at 2. Under that Agreement, "Maxitransfers appointed Envios . . . as a trustee and fiduciary for money

transmissions by Maxitransfers." Dkt. No. 10 at 3. In that capacity, Envios received funds from customers and notified Maxitransfers of the customers' requests to transmit commensurate funds to the intended recipient. Dkt. No. 10 at 4; *see also* Dkt. No. 17 at 1; Dkt. No. 17-2 at 2–3. Envios was then required to remit to Maxitransfers the funds it received from the customer and held in trust for Maxitransfers. Dkt. No. 10 at 4; *see also* Dkt. No. 17 at 1; Dkt. No. 17-2 at 3–4.

Envios defaulted on the Transmission Agreement in early 2024. Dkt. No. 17-1 at 3. On March 15, 2024, Envios and Cardenas Garcia (Envios' controlling member) executed a secured promissory note (the "Note") payable to Maxitransfers that "established a payment plan allowing Envios to bring itself current" on the Transmission Agreement. Dkt. No. 10 at 5; *see also* Dkt. No. 17 at 2; Dkt. No. 17-3. Under the Note, Envios agreed to pay Maxitransfers a total sum of $320,000, which would be disbursed beginning on April 1, 2024 in 21 monthly payments of $15,000 and a final payment of $5,000. Dkt. No. 10 at 5; *see also* Dkt. No. 17 at 2; Dkt. No. 17-3 at 2. Envios also executed a security agreement (the "Security Agreement") that granted a lien against various assets to secure its obligations under the Note. Dkt. No. 10 at 5; *see also* Dkt. No. 17 at 2; Dkt. No. 17-4. Additionally, Cardenas Garcia executed a personal guaranty of Envios' repayment obligations under the promissory note. Dkt. No. 10 at 5; *see also* Dkt. No. 17 at 2; Dkt. No. 17-5.

Envios then not only failed to fully pay the amounts due under the Note, but also failed to remit amounts owed for subsequent transactions under the Transmission Agreement. Dkt. No. 10 at 5–6. For example, on June 3, 2024, Envios only delivered $205,595 of the $222,792.10 in funds that were due to Maxitransfers under the Transmission Agreement. Dkt. No. 17 at 2. On June 5, 2024, Envios again fell short, delivering only $70,658 of the $224,730.80 in funds due to Maxitransfers. *Id.* And on June 7, 2024, Envios only delivered $86,033 of the $141,735 transmitted over the prior two days. *Id.*

After failing to receive the remaining funds due, Maxitransfers terminated the Transmission Agreement on June 9, 2024 and stopped processing transactions for its customers via Envios. Dkt. No. 10 at 4; Dkt. No. 17 at 2; Dkt. No. 17-1 at 4. Maxitransfers alleges that, to date, Envios still holds over $300,000 in funds that it failed to remit to Maxitransfers under the Transmission Agreement. Dkt. No. 17 at 2; Dkt. No. 17-1 at 4.[1] It also avers that both Envios and Cardenas Garcia have failed to pay the $260,000 that is owed under the Note and Guaranty. Dkt. No. 17 at 2; Dkt. No. 17-1 at 4.

**B.    Procedural History**

Maxitransfers initiated this action on July 11, 2024. Dkt. No. 1. It amended its complaint on August 13, 2024, asserting breach of contract, breach of fiduciary duty, conversion, and declaratory judgment claims. Dkt. No. 10 at 6–9. The amended complaint seeks several forms of relief: (1) monetary relief for damages caused by Defendants' alleged actions; (2) the issuance of a writ of attachment against all personal property pledged as security by Envios under the Transmission Agreement in accordance with state law; (3) the issuance of a declaration of Maxitransfers' right to transfer or register in its own name the collateral that Defendants pledged and sell it to recover the amounts due under the Note, Security Agreement, and Guaranty; (4) pre- and post-judgment interest, as allowed by law; and (5) attorney's fees and costs, as allowed by law. *Id.* at 10.

Maxitransfers served Envios' authorized representative with the summons and amended complaint on August 26, 2024, and served Cardenas Garcia personally on the same day. Dkt. Nos. 15-2, 15-3. Neither Defendant filed an answer or otherwise responded to the amended complaint.

---

[1] Maxitransfers alleges in its complaint that Envios owes a total of $303,074.71 in funds it failed to remit under the Transmission Agreement. Dkt. No. 10 at 5. In its motion, though, it states that Envios owes $304,480.71 in funds it failed to remit. Dkt. No. 17 at 2, 5.

The Clerk entered default against both Envios and Cardenas Garcia on October 11, 2024. Dkt. No. 16 at 1.

Maxitransfers filed the instant motion on December 2, 2024. Dkt. No. 17. It represents that prior to filing the motion, it reached out to an attorney who had previously indicated that he was providing assistance (not representation) to Defendants to determine whether either Defendant had retained counsel. *Id.* at 3. Neither that attorney nor anyone else purporting to represent either Defendant responded. *Id.*

## II.    DISCUSSION

### A.    Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is total diversity between the parties. Dkt. No. 10 at 2–3, 5–6 (Maxitransfers is a citizen of California, and Envios and Cadenas Garcia are citizens of Washington). The Court also has personal jurisdiction over Defendants because "Envios is a corporation organized under Washington law with a principal place of business in [Washington]," *id.* at 3, "Garcia is a Washington citizen," *id.*, and Maxitransfers properly served both Envios and Cardenas Garcia in this District, Dkt. Nos. 15-2 at 2; Dkt. No. 15-3 at 2; *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (personal jurisdiction over a defendant may be acquired by personal service on that defendant).

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(c) because Envios maintains a principal place of business in this District, Cardenas Garcia resides in this District, and both Envios and Cardenas Garcia transacted business and engaged in the conduct complained of in this District. Dkt. No. 10 at 3.

**B.     Legal Standard**

Courts have discretion to enter default judgment in favor of a plaintiff if the defendant has defaulted by failing to appear or otherwise defend. Fed. R. Civ. P. 55(a)–(b); LCR 55(a)–(b); *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding whether to grant a motion for default judgment (collectively, the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). However, these allegations must establish the relief to which plaintiff is entitled. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. In addition, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C.     Maxitransfers is Entitled to Default Judgment**

The Court has considered the *Eitel* factors and finds that an entry of default judgment is appropriate in this case.

    1.     <u>The Possibility of Prejudice to Maxitransfers</u>

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. *See, e.g.*, *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177

1    (C.D. Cal. 2002). Defendants have failed to respond to this action, so default judgment is

2    Maxitransfers' only means for recovery. Thus, the first *Eitel* factor supports default judgment.

3    *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) ("[P]rejudice exists

4    where the plaintiff has no recourse for recovery other than default judgment." (quotation marks

5    and citation omitted)).

6            2.    The Merits of Maxitransfers' Substantive Claims and the Sufficiency of the Complaint

7            "The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency

8    of the complaint—are often analyzed together." *Curtis*, 33 F. Supp. 3d at 1211. In evaluating these

9    factors, the Court considers whether the allegations in the complaint are sufficient to state a claim

10   on which Maxitransfers may recover. *See Danning*, 572 F.2d at 1388. Maxitransfers pleads a

11   breach of contract claim with respect to the Transmission Agreement against Envios, breach of

12   contract claims with respect to the Note and Security Agreement against both Envios and Cardenas

13   Garcia, a breach of fiduciary duty claim against Envios, and a conversion claim against Envios.

14   Dkt. No. 10 at 6–9. Maxitransfers requests that the Court award it $304,480.71 due under the

15   Transmission Agreement, $260,000 due under the Note and Guaranty, and $49,821.68 in

16   attorney's fees and costs. Dkt. No. 17 at 5; *see also* Dkt. No. 10 at 10.[2]

17           "[F]ederal courts sitting in diversity apply state substantive law and federal procedural

18   law." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. Tompkins*,

19   304 U.S. 64, 78 (1938)). Therefore, the Court must apply state law to the substantive issues

20   regarding the claims. Maxitransfers avers in its motion for summary judgment that all three of

21   these claims are meritorious under Washington law. Dkt. No. 17 at 4 (citing cases from this District

22

23   ───────────────
     [2] Maxitransfers includes two sections addressing requests for relief in its motion; one section includes interest, and
24   one does not. Dkt. No. 17 at 5–6. Although a proposed order could have helped clarify the relief Maxitransfers seeks,
     Maxitransfers did not file a proposed order in violation of Local Civil Rule 7(b)(1). The Court takes this into account
     when determining whether Maxitransfers' attorney's fees are reasonable.

1    applying Washington law). However, Maxitransfers has failed to address whether it is the law of

2    Washington (the forum state) that should apply or the law of Texas, as set forth in the Transmission

3    Agreement, Note, Security Agreement, and Guaranty. *See* Dkt. No. 17-2 at 8 ("This Agreement is

4    governed by and shall be construed in accordance with the laws of the state of Texas, excluding

5    any conflict-of-laws rules or principle that might refer the governance or the construction of this

6    Agreement to the law of another jurisdiction." (emphases removed)); Dkt. No. 17-3 at 5 ("This

7    Note is a contract made under the laws of Texas, and for all purposes shall be governed by,

8    construed and enforced in accordance with the internal laws thereof, without reference to

9    principles of conflicts of laws."); Dkt. No. 17-4 at 7 ("This Security Agreement shall be construed

10   under and in accordance with the Uniform Commercial Code and other applicable laws of the State

11   of Texas and all obligations of the parties created hereunder are performable in the State of

12   Texas."); Dkt. No. 17-5 at 4 ("This Guaranty shall be construed in accordance with and governed

13   by the laws of the State of Texas without giving effect to its conflict of law provisions.").

14          Washington courts will enforce a choice-of-law provision unless a three-part test is

15   satisfied: (1) "without the provision, Washington law would apply" under section 188 of the

16   Restatement (Second) of Conflicts of Laws; (2) "the chosen state's law violates a fundamental

17   public policy of Washington"; and (3) "Washington's interest in the determination of the issue

18   materially outweighs the chosen state's interest." *McKee v. AT & T Corp.*, 191 P.3d 845, 851

19   (Wash. 2008). Here, the test is not satisfied. Under Texas law, the elements of a breach of contract

20   claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the

21   plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as

22   a result of the breach." *Sugg v. Midwestern Univ.*, 105 F.4th 345, 352 (5th Cir. 2024) (quoting

23   *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)). Similarly, to establish a

24   breach of contract claim under Washington law, a plaintiff must show that "the contract imposes

a duty, the duty is breached, and the breach proximately causes damage to the claimant." *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. 1995). Texas's similar law regarding breach of contract claims does not violate a fundamental public policy of Washington. *See DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 317 P.3d 543, 551 (Wash. Ct. App. 2014) ("[T]he general rule is that a party who has substantially performed may maintain an action on a contract[.]"). The Court therefore applies Texas law to Maxitransfers' breach of contract claims against Defendants.[3]

Under the Transmission Agreement, Maxitransfers appointed Envios "as a trustee for the sole purpose of receiving and transmitting Money Transmissions through Maxi[transfers.]" Dkt. No. 17-2 at 2.[4] Envios was required to "remit or deposit all Trust Funds received for Money Transmissions, including commissions and fees charged to the customer as of the prior day, into Maxi[transfers'] bank account" in accordance with a set schedule. *Id.* at 4.[5] Pursuant to this schedule, Envios was required to make deposits on Monday for transactions made on the preceding Friday, Saturday, and Sunday, on Wednesday for the preceding Monday and Tuesday, and on Friday for the preceding Wednesday and Thursday. *Id.* In the event deposits were not received as agreed, Envios was "obligat[ed] to return all Trust Funds received for the execution of the transaction to the customer," *id.*, and Maxitransfers could also terminate the Transmission Agreement "upon written notification to [Envios]," *id.* at 7. Envios further "guarantee[d] any and all costs, fees and expenses, including reasonable attorneys' fees, resulting from (i) [Envios]'s failure to effect and pay remittances sent to [Envios] by Maxi[transfers], (ii) [Envios]'s failure to

---

[3] Because Maxitransfers is entitled to the remedies it seeks based on its breach of contract claims, the Court need not decide the merits of its other claims. *See Johnson v. Peter*, No. C21-1602-LK, 2023 WL 22021, at *5 n.1 (W.D. Wash. Jan. 3, 2023).

[4] The Transmission Agreement defines "Money Transmission" as the "transmi[ssion]" of "cash and negotiable instruments . . . pursuant to specific instructions by customers[.]" *Id.*

[5] "Trust Funds" are "any and all monies received for the account of Maxi[transfers]." *Id.* at 2.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT - 8

pay any sum due from [Envios] to Maxi[transfers] under this Agreement, or (iii) [Envios]'s failure to perform any of the terms or conditions of this Agreement." *Id.* Finally, the Agreement provided that "[i]f any action at law or in equity . . . is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover actual attorney's fees, court costs, and other costs incurred in proceeding with the action from the other party." *Id.* at 8.

Envios and Cardenas Garcia then agreed under the Note to pay Maxitransfers 21 monthly payments of $15,000 each and one final payment of $5,000, beginning on April 1, 2024, Dkt. No. 17-3 at 2, but failed to do so, Dkt. No. 10 at 6. In the event Envios "fail[ed] to pay when due any principal or interest on th[e] Note," or "fail[ed] . . . to perform in any material respect any other of the material covenants or agreements . . . in the Security Agreement or . . . Transmission Agreement," such failure would be an "Event of Default" and Maxitransfers could "declare the unpaid principal and accrued and unpaid interest of th[e] Note due and payable immediately, and upon any such declaration the same shall be immediately due and payable." Dkt. No. 17-3 at 3. If an Event of Default occurred under the Note, Maxitransfers would be entitled to "recover from [Envios] . . . reasonable attorney's fees in its collection attempts on the Note[.]" *Id.* at 4. The Note was secured by a Security Agreement, *id.* at 3, under which Envios granted a security interest in certain of Envios' assets to Maxitransfers, Dkt. No. 17-4. Additionally, Cardenas Garcia agreed under the Guaranty to pay Envios' obligations under the Note, "including all costs, attorneys' fees and expenses paid or incurred by [Maxitransfers] in endeavoring to collect obligations under th[e] Guaranty or the Note" in the event Envios defaulted on its obligations. Dkt. No. 17-5 at 2.

Maxitransfers alleges in its amended complaint that although it "complied with its obligations under the Transmission Agreement," Envios did not. Dkt. No. 10 at 4. Specifically, it failed to "remit to Maxitransfers all funds it received from the customer" by the agreed-upon schedule. *Id.* at 4–5. Then, when Maxitransfers agreed to allow Envios to repay the funds via a

payment plan under the Note (ultimately totaling $320,000 over the course of 21 monthly payments, Dkt. No. 17-3 at 2), Envios again failed to pay the amounts due, leaving $260,000 owed under the Note and $303,074.71 owed for post-Note transactions under the Transmission Agreement. Dkt. No. 10 at 5–6. Envios and Cardenas Garcia then failed to fulfill their obligations under the Note, Security Agreement, and Guaranty to tender the sums due to Maxitransfers, while Maxitransfers "fully performed its obligations" under those contracts. *Id*. at 6. These uncontested allegations establish that Maxitransfers performed under the Transmission Agreement, Note, Security Agreement, and Guaranty, that Envios breached the Transmission Agreement, Note, and Security Agreement by failing to pay Maxitransfers the sums owed, and that Cardenas Garcia breached her obligation under the Guaranty to tender the funds due to Maxitransfers under the Note. Because (1) the Transmission Agreement, Note, Security Agreement, and Guaranty are valid contracts; (2) Maxitransfers has performed under those contracts; (3) the Defendants breached those contracts; and (4) Maxitransfers sustained damages as a result of the breach, Maxitransfers' breach of contract claims have merit.

### 3. The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This requires the Court to assess whether the recovery sought is proportional to the harm caused by Defendants' conduct. Default judgment is disfavored where the sum of money at stake is disproportionate or otherwise unreasonable in relation to such harm. *See Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014).

Here, Maxitransfers requests that the Court "award it [the] precise amount of funds" that were withheld by Defendants—i.e., the $304,480.71 due to Maxitransfers under the Transmission Agreement and the $260,000 due under the Note, Security Agreement, and Guaranty—as well as

associated attorney's fees of nearly $50,000. Dkt. No. 17 at 5–6. The total amount is substantial, but Maxitransfers is entitled to the vast majority of the sums it seeks under the contracts and to much of the attorney's fees it seeks. These amounts are proportional to and reflective of the amount Maxitransfers has lost because of the unpaid obligations. This factor therefore weighs in favor of default judgment. *Johnson v. Peter*, No. C21-1602-LK, 2023 WL 22021, at *5 (W.D. Wash. Jan. 3, 2023).

4. <u>The Possibility of a Dispute Concerning Material Facts</u>

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. This factor therefore supports the entry of default judgment.

5. <u>Whether the Default Was Due to Excusable Neglect</u>

Turning to the sixth factor, the record contains no indication that Defendants' default was due to excusable neglect. Each Defendant has been served and given sufficient notice of this action. Dkt. Nos. 15-2, 15-3. Although the record does not show that Maxitransfers served Defendants with its motion for default judgment, it was not required to do so since Defendants have not appeared in this action. LCR 55(b)(4). Because there is no evidence of excusable neglect, this *Eitel* factor favors the entry of a default judgment. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *4 (W.D. Wash. Jan. 31, 2022).

6. <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits</u>

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive," because Rule 55 allows a court to issue a default

1    judgment if the defendant fails to appear and defend. *PepsiCo*, 238 F. Supp. 2d at 1177 (citation

2    modified). Accordingly, the policy in favor of decisions on the merits does not, by itself, preclude

3    the entry of default judgment especially where, as here, the defendants have failed to appear or

4    defend and the other *Eitel* factors weigh in favor of entering a default judgment.

5         In sum, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment in

6    favor of Maxitransfers and that default judgment is therefore warranted.

7    **D.    Maxitransfers' Recovery**

8         Having determined that a default judgment is warranted, the Court turns to Maxitransfers'

9    recovery. Again, the Court does not presume the truth of any factual allegations related to the

10   amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. A plaintiff must prove all damages

11   sought in the complaint, LCR 55, and "[a] default judgment must not differ in kind from, or exceed

12   in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c); *see also* LCR 55(b).

13        Maxitransfers requests in its motion for default judgment (1) "$304,480.71 in actual

14   damages from defendant Envios," (2) "$260,000.00 in actual damages from defendants Envios

15   and Ms. Garcia jointly and severally," (3) "$49,821.68 in attorney's fees and costs from defendants

16   jointly and severally," and (4) "post-judgment interest at the rate allowed by 28 U.S.C. § 1961(a)."

17   Dkt. No. 17 at 5–6.[6]

18        1.    <u>Damages</u>

19        In support of its damages request, Maxitransfers has proffered copies of the Transmission

20   Agreement, Note, Security Agreement, and Guaranty, Dkt. Nos. 17-2, 17-3, 17-4, as well as a

21   transaction statement for Envios "reflecting all funds Maxitransfers transmitted at Envios'

---

[6] In its complaint, Maxitransfers also prayed for (1) a writ of attachment against all personal property pledged as security by Envios under the Transmission Agreement after notice and opportunity for hearing as required by Section 6.25.070(5) of the Revised Code of Washington and (2) a declaration that Maxitransfers had the right to transfer or register in its own name the collateral that Defendants pledged and sell it to recover the amounts due under the Note, Security Agreement, and Guaranty. Maxitransfers did not move for default judgment on these two forms for relief.

1    instruction and all funds it then received from Envios" and a repayment statement where

2    Maxitransfers logged Defendants' default on July 3, 2024, Dkt. No. 17-1 at 3–4; *see also* Dkt. Nos.

3    17-6, 17-7. A careful review of these documents shows that Maxitransfers' damages claims are

4    supported.[7]

5        However, Maxitransfers is only entitled to a default judgment award that does "not differ

6    in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see*

7    *also* LCR 55(b). "The purpose of this rule is to ensure that a defendant is put on notice of the

8    damages being sought against it so that [it] may make a calculated decision as to whether or not it

9    is in [its] best interest to answer." *Alameda Cnty. Elec. Indus. Serv. Corp. v. Banister Elec., Inc.*,

10   No. C 11-04126 LB, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012). As noted above,

11   Maxitransfers' complaint specifies damages of $303,074.71 owed under the Transmission

12   Agreement, Dkt. No. 10 at 5, while its motion for default judgment requests $304,408.71, Dkt.

13   No. 17 at 5. Therefore, Maxitransfers is only entitled to the $303,074.71 that it pleaded in its

14   complaint. *See Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 272 (9th Cir. 1964)

15   (district court erred by awarding relief that was not requested in the "prayer of the complaint");

16   *Eve Nevada*, 2022 WL 279030, at *7 n.4 ("Consistent with Rule 54(c), the Court declines to

17   entertain relief sought in Plaintiffs' motion and proposed order that exceeds what is demanded in

18   their pleadings."); *Gray Ins. Co. v. Lectrfy, Inc.*, No. SACV 13-1411-DOC (ANx), 2014 WL

19   12689270, at *7 (C.D. Cal. Mar. 3, 2014) (damages award for breach of contract in a motion for

20   default judgment was limited to the amount pleaded in the complaint).

21

22

23   ───────────────
     [7] The Court notes that Maxitransfers is entitled to recover damages that "flow naturally" from the breach of contract
     under Texas law. *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 631 (Tex. 2020) ("[D]irect
24   damages are those that the breaching party is "'conclusively presumed' to have foreseen as a result of its breach
     because they 'are the *necessary* and usual result of,' and 'flow naturally and *necessarily* from,' that wrongful act.").

Accordingly, Maxitransfers is awarded $303,074.71 in actual damages from Envios due under the Transmission Agreement and $260,000 in actual damages from both Defendants jointly and severally.

### 2. Attorney's Fees

Maxitransfers further seeks $48,817 in attorney's fees. Dkt. No. 17-8 at 6. The Transmission Agreement, Note, and Guaranty all authorize Maxitransfers to recover reasonable attorney's fees in addition to its actual damages. Dkt. No. 17-2 at 8; Dkt. No. 17-3 at 4; Dkt. No. 17-5 at 2. Texas law also allows for the recovery of attorney's fees to enforce a contract. *See Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004) (noting that "Texas law allows attorney's fees to be awarded in breach of contract claims" (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001)).

To establish the reasonableness of its requested fees, Maxitransfers properly uses the "lodestar" method, Dkt. No. 17-8 at 3–4, which involves multiplying the number of hours reasonably expended on the claim or motion by a reasonable hourly rate, *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *see also* LCR 55(b)(2)(C). In calculating the lodestar figure, the Court may enhance or reduce the lodestar figure based upon consideration of any of the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). In this case, the relevant *Kerr* factors include: the time and labor required, the novelty and difficulty of the questions involved, the requisite skill required, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, and awards in similar cases. *See Kerr*, 526 F.2d at 70.

#### (a) Hourly Rates

Here, six legal professionals in the Washington D.C. office of Akerman LLP billed time to this case on behalf of Maxitransfers, at the following rates:

| Name | Hourly Rate | Title |
|------|-------------|-------|
| Eric Goldberg | $800.00 | Partner |
| Aliza Malouf | $800.00 | Partner |
| Ildefonso "Dito" P. Mas | $800.00 | Partner |
| Robert Martin Dungan | $400.00 | Associate |
| A. Michelle Santos | $200.00 | Paralegal |
| Melanie Lechuga | $200.00[8] | Paralegal |

Dkt. No. 17-8 at 3–4.

When determining a reasonable hourly rate, courts generally consider the "experience, skill and reputation of the attorney requesting fees," *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996) (quoting *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 908 (9th Cir. 1995)), as well as "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The relevant community is the forum in which the district court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The party seeking an award of attorney's fees bears the burden of producing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services" by comparable lawyers. *Blum*, 465 U.S. at 895 n.11; *accord Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014). District judges can also "consider the fees awarded by other judges in the same locality in similar cases," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008), and rely on their own knowledge and familiarity with the legal market in setting a reasonable rate, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam).

The Court first notes that the hourly rates for both paralegals—both of whom have 10 or more years of paralegal experience—are, as Mr. Goldberg claims in his declaration, consistent with the "median market rate for their experience and skill" in this District. Dkt. No. 17-8 at 6; *see*

---

[8] Although Akerman states that Ms. Lechuga's rate was $195, Dkt. No. 17-8 at 6, she billed Maxitransfers at a rate of $200, Dkt. No. 17-9 at 28.

*also McEuen v. Riverview Bancorp, Inc.*, No. C12-5997 RJB, 2014 WL 2197851, at *4 (W.D. Wash. May 27, 2014). But while the fee table and invoices indicate that the paralegals charged $200 per hour, Mr. Goldberg later attests that both "paralegals billed at $195.00 an hour." Dkt. No. 17-8 at 4, 6; Dkt. No. 17-9 at 28. Due to this discrepancy, the Court awards fees for both paralegals at a rate of $195.00 per hour.

With respect to the attorneys' hourly rates, Mr. Goldberg avers in conclusory fashion that "attorneys' fees were billed at or below customary rates" and "are reasonable in light of the experience of the individuals involved and the average attorney billing rates generally prevailing in King County, Washington." *Id.* at 4. To support Akerman's petition for fees, he cites to *Knudsen v. Hightower Holdings, LLC*, No. C24-0395-KKE, 2024 WL 3430994 (W.D. Wash. July 16, 2024), contending that the court in that case concluded that "rates around $800.00 an hour were reasonable for two partners of more than twenty years' experience and approved rates around $650.00 for attorneys with less than ten years' experience." *Id.* at 5. However, the court in *Knudsen* noted that "$850 is on the higher end of hourly rates in the Seattle legal community" and justified the approval of the rates in light of "the complexity of th[e] case, the expedited timeline, and the excellent quality of [p]laintiffs' representation[.]" 2024 WL 3430994, at *3.

Such justifications are not present here. This case—which is, at its core, a straightforward breach of contract claim—is not particularly complex, and there was no expedited timeline. The Court also finds that counsel's performance in this case is not on par with their years of experience. For example, Maxitransfers failed to properly allege the citizenship of the parties in its complaint, Dkt. No. 9 at 2–3, failed to address the choice-of-law provisions in the relevant contracts, failed to submit a proposed order in violation of Local Civil Rule 7(b)(1), submitted conflicting damages requests pertaining to the amount of unremitted funds under the Transmission Agreement, and submitted an inflated attorney fee request (discussed below). In addition, Maxitransfers ignored

Section VIII.C of the Court's Standing Order for all Civil Cases—which states that the Court "will not award fees incurred correcting mistakes," Dkt. No. 14-1 at 6—when it requested fees incurred correcting mistakes as part of its attorney fee award. *See infra* Section II.D.2(b).

The Court also notes that the attorneys who billed time to this matter have fewer years of experience than those whose fees were approved in *Knudsen*. *Compare Knudsen*, 2024 WL 3430994, at *3 (approving fees for attorneys of 32, 20, 16, nine, and six years' of experience), *with* Dkt. No. 17-8 at 4–5.[9] Accordingly, based on counsel's performance on this case and the Court's familiarity with the rates charged by attorneys in the Seattle legal community who represent clients in similar cases and who have similar qualifications, the Court approves the following fee rates:

| Name | Hourly Rate | Title |
|---|---|---|
| Eric Goldberg | $650.00 | Partner |
| Aliza Malouf | $600.00 | Partner |
| Ildefonso "Dito" P. Mas | $600.00 | Partner |
| Robert Martin Dungan | $400.00 | Associate |
| A. Michelle Santos | $195.00 | Paralegal |
| Melanie Lechuga | $195.00 | Paralegal |

*(b) Number of Hours*

With respect to the reasonableness of the number of hours billed, the Court again notes that Maxitransfers bears "the burden of documenting the hours expended on this matter and establishing their reasonableness." *UN4 Prods., Inc. v. Primozich*, 372 F. Supp. 3d 1129, 1137 (W.D. Wash. 2019). The hours claimed by a party may be reduced by the court if "the documentation of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of*

---

[9] Maxitransfers' declaration does not indicate the substance or duration of Mr. Mas's experience "in criminal and restitution matters" (or in practicing law generally). Dkt. No. 17-8 at 5.

1  *Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986); *see also McCown v. City of Fontana*, 565 F.3d

2  1097, 1102 (9th Cir. 2009).

3      The Court first observes that the heavy redactions to protect "attorney-client privileged

4  information," Dkt. No. 17-8 at 6; *see also generally* Dkt. No. 17-9, preclude it from assessing the

5  reasonableness of numerous entries. Nothing prevented counsel from providing the necessary

6  information to the Court by submitting the invoices under seal. LCR 5(g). The Court accordingly

7  excludes the following entries:

- July 8, 2024 entry by Ms. Malouf: "Evaluate strategy for _____" (0.9 hours, $720);

- July 11, 2024 entry by Ms. Malouf: "Further evaluate strategy for _____" (0.6 hours, $480);

- July 11, 2024 entry by Ms. Malouf: "Evaluate possible strategies for _____" (0.2 hours, $160);

- July 12, 2024 entry by Ms. Malouf: "Further evaluate whether _____" (0.2 hours, $160);

- August 7, 2024 entry by Ms. Malouf: "Evaluate _____ information to _____" (0.1 hours, $80);

- August 19, 2024 entry by Ms. Santos: "Run various searches _____ on westlaw." (2.3 hours, $460);

- August 20, 2024 entry by Mr. Mas: "Call with paralegal to _____" (0.5 hours, $400);

- August 21, 2024 entry by Ms. Santos: "Run various searches in westlaw re caselaw to _____" (2.1 hours, $420);

- August 21, 2024 entry by Mr. Mas: "Review prior cases involving _____ for purposes of _____" (0.5 hours, $400);

- October 30, 2024 entry by Ms. Malouf: "evaluate strategy for _____" (1.1 hours, $880).

*See* Dkt. No. 17-9 at 4–5, 11, 13–14, 27.

These are not the only problematic entries. The Court will also not award fees incurred as a result of the need to draft, file, and serve Maxitransfers' amended complaint, as these fees arise out of Maxitransfers' counsel's "need to correct their mistakes and are, therefore, both excessive and redundant." *Johnson*, 2023 WL 22021, at *8; *see also* July 12, 2024 Docket Entry; Dkt. No. 6; Dkt. No. 9 at 3; Dkt. Nos. 10–11. These time entries, at minimum, include the following:

- August 6, 2024 entry by Mr. Dungan: "Review background search on individual agent representative for available evidence to establish domicile and citizenship to incorporate in proposed amended complaint per court order" (0.3 hours, $120);

- August 6, 2024 entry by Mr. Dungan: "Draft proposed first amended complaint to incorporate identified background information on individual agent regarding domicile and residence for citizenship purposes per court jurisdictional order" (0.4 hours, $160)

- August 8, 2024 entry by Mr. Dungan: "Draft proposed first amended complaint to incorporate new information on trust structure, authority of trustee, and trustee role as trust litigator for response to court jurisdictional instruction" (0.9 hours, $360);

- August 9, 2024 entry by Ms. Malouf: "Revisions to first amended complaint" (0.1 hours, $80); and

- August 12, 2024 entry by Mr. Dungan: "Revise proposed first amended complaint to _____" (0.4 hours, $160).

Dkt. No. 17-9 at 5, 11–12.

The above reductions result in the following total fee award of $36,058.50:

| Timekeeper | Proposed Rate | Revised Rate | Proposed Hours | Revised Hours | Proposed Total | Revised Total |
|---|---|---|---|---|---|---|
| Goldberg | $800.00 | $650 | 0.5 | 0.5 | $400.00 | $325.00 |
| Malouf | $800.00 | $600.00 | 9.2 | 6 | $7,360.00 | $3,600.00 |
| Mas | $800.00 | $600.00 | 27.2[10] | 26.2 | $21,760.00 | $15,720.00 |
| Dungan | $400.00 | $400.00 | 30.7 | 28.7 | $12,280.00 | $11,480.00 |
| Santos | $200.00 | $195.00 | 27.8[11] | 23.4 | $5,560.00 | $4,563.00 |
| Lechuga | $200.00 | $195.00 | 1.9 | 1.9 | $380.00 | $370.50 |
| **Total** | | | **97.3** | **86.7** | **$47,740.00** | **$36,058.50** |

Notably, although Akerman asks the Court to award it $48,817 in attorney's fees, Dkt. No. 17-8 at 3, 6, it charged Maxitransfers for only $47,740, Dkt. No. 17-9 at 8, 17, 22, 28.[12] The Court takes this error into account when assessing the reasonableness of Akerman's rates.

After applying the reduced hours to the reduced hourly rates, the Court arrives at a lodestar figure of $36,058.50. The Court finds that this is an appropriate award under these circumstances.

### 3. Costs

As set forth above, Maxitransfers is the prevailing party and is therefore entitled to costs. An award of standard costs in federal district court is normally governed by Federal Rule of Civil Procedure 54(d), including in diversity cases like this one. *See In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987). Under Federal Rule of Civil Procedure 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless a court order or statute provides otherwise. A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

---

[10] The hours listed for Mr. Mas in Akerman's invoices total 28.2. Dkt. No. 17-9 at 8, 17, 22, 28. However, Akerman did not charge Maxitransfers for one hour of this time. *Id.* at 14–15. Akerman does not account for this write-off in its fee request. The Court takes this into account when assessing the reasonableness of Akerman's rates.

[11] The hours listed for Ms. Santos in Akerman's invoices total 30.3. Dkt. No. 17-9 at 8, 17, 22, 28. However, Akerman did not charge Maxitransfers for 2.5 hours of this time. *Id.* at 15. Akerman does not account for this write-off in its fee request. The Court takes this into account when assessing the reasonableness of Akerman's rates.

[12] Even if Akerman had billed Maxitransfers for the charged-off hours, the Court would award no fees for these entries because redactions make it impossible to assess the reasonableness of the charges. Dkt. No. 17-9 at 14–15.

1    Maxitransfers seeks costs and expenses of $1,004.68. Dkt. No. 17-8 at 3. These costs

2    include $405 for the Court's filing fee, $0.30 for PACER public records system costs, $296.06 for

3    service of process related to the original complaint, $29.26 for mailing of legal documents, and

4    $274.06 for service of process related to the amended complaint. Dkt. No. 17-9 at 15–16, 21.

5    Pursuant to 28 U.S.C. § 1920, the filing fee and service costs are properly taxable; however, the

6    Court again will not award costs incurred as a result of the need to serve the amended complaint.

7        While it less clear that the cost of the overnight mailing is recoverable under the statute, it

8    is recoverable under the contract. A contract can permit a court to award costs beyond those

9    allowed by federal law. *See Crawford Fitting Co.*, 482 U.S. at 439. This Court, sitting in diversity,

10   looks to state law to determine whether costs beyond those authorized by 28 U.S.C. § 1920 can be

11   awarded under the parties' contract. *See, e.g.*, *Hunt v. Zuffa*, 528 F. Supp. 3d 1180, 1185–86 (D.

12   Nev. 2021). Under Texas law, the Court is permitted to award all reasonable costs incurred as a

13   result of collection efforts if the parties so agreed in their contract, as the parties did in this case.

14   Dkt. No. 17-2 at 8; Dkt. No. 17-5 at 2; *see also Hancock v. Chicago Title Ins. Co.*, Nos. 3:07-CV-

15   1441-D, 3:08–CV–1916–D, 2013 WL 2391500, at *14 (N.D. Tex. June 3, 2013) (awarding costs

16   not within Section 1920's taxable expenses under a contract which provided for the recovery of

17   "other costs incurred in [an] action or proceeding," "in addition to any other relief to which

18   [defendant] may be entitled" (emphasis removed)). Therefore, the Court awards the costs of

19   mailing under the contracts and awards the other costs sought under 28 U.S.C. § 1920 except for

20   those associated with serving the amended complaint, for a total of $730.62 in costs.

21        4.  Interest

22        Finally, Maxitransfers requests an award of "post-judgment interest at the rate allowed by

23   28 U.S.C. § 1961(a)," Dkt. No. 17 at 6, which is consistent with the rate demanded in the amended

24   complaint, Dkt. No. 10 at 10 ("An award of all . . . post-judgment interest allowed by law[.]").

Such an award is "mandatory . . . on any money judgment in a civil case recovered in a district court." *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coalition of Life Activities*, 518 F.3d 1013, 1018 (9th Cir. 2008) (cleaned up); 28 U.S.C. § 1961(a). Accordingly, the Court awards Maxitransfers post-judgment interest accruing at the rate set forth in 28 U.S.C. § 1961 from the date judgment is entered until fully paid.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Maxitransfers' motion for default judgment. Dkt. No. 17. Default judgment shall enter in favor of Maxitransfers and against Defendants Envios and Cardenas Garcia, as follows:

(1)     Maxitransfers is awarded $563,074.71 in damages;

      a.  $303,074.71 of this amount is awarded to Maxitransfers against Envios; and

      b.  $260,000 of this amount is awarded to Maxitransfers against Envios and Cardenas Garcia jointly and severally;

(2)     Maxitransfers is awarded $36,058.50 in attorney's fees against Envios and Cardenas Garcia jointly and severally, as such fees are so intertwined with the claims against both Defendants that they cannot be segregated;

(3)     Maxitransfers is awarded $730.62 in costs against Envios and Cardenas Garcia jointly and severally, as such costs are so intertwined with the claims against both Defendants that they cannot be segregated; and

(4)     Post-judgment interest shall accrue on the judgment pursuant to 28 U.S.C. § 1961(a).

Dated this 21st day of July, 2025.

Lauren King
United States District Judge